# Third District Court of Appeal

## State of Florida

Opinion filed November 29, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-980
Lower Tribunal No. 16-1999-B
_____

**C.T., a juvenile,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Maria De Jesus Santovenia, Judge.

Carlos J. Martinez, Public Defender, and Jeffrey Paul DeSousa, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Kayla H. McNab, Assistant Attorney General, for appellee.

Before SUAREZ, LAGOA, and SCALES, JJ.

LAGOA, J.

C.T., a juvenile, appeals from the trial court's order withholding adjudication of delinquency and placing him on probation for grand theft of a motor vehicle. Because the State failed to present sufficient evidence that C.T. knew the car he was driving was stolen, we reverse.

I.     FACTUAL AND PROCEDURAL HISTORY

On August 18, 2016, the State filed a petition for delinquency charging C.T. with grand theft of a motor vehicle in violation of section 812.014(2)(c)6, Florida Statutes (2016), for an incident that occurred on July 30, 2016. An adjudicatory hearing was held on October 26, 2016.

At the adjudicatory hearing, the only issue before the trial court was whether C.T. knew that the car he was driving was stolen when stopped by the police. Because the case against C.T. was entirely circumstantial, the State relied upon the statutory inference of guilty knowledge provided by section 812.022(2), Florida Statutes (2016), which states that "proof of possession of property recently stolen, unless satisfactorily explained, gives rise to an inference that the person in possession of the property knew or should have known that the property had been stolen."

At the adjudicatory hearing, the State presented testimony from the victim, Hector Alvarez. Alvarez testified that his vehicle was stolen on the evening of July 27, 2016. At 5 a.m. on July 30, while driving his girlfriend to work, Alvarez

saw his car approximately four to six miles from where it was stolen. Alvarez followed the car and called the police. The police subsequently stopped the car. Alvarez testified that when the police officers approached the car, the driver did not alter his speed or attempt to flee. One of the officers at the traffic stop, Officer Hernandez, testified that C.T. was the driver of the car. Defense counsel conceded that the car stopped by the police was Alvarez's car and that it was stolen on the night of July 27. Alvarez testified that when he retrieved his car, it had not been physically altered or damaged in any way.

Following the State's case, the defense moved for judgment of dismissal, which the trial court denied.

C.T. also testified at the hearing. C.T. denied stealing Alvarez's car or knowing that it was stolen. C.T. testified that on the night at issue he got the key to the car from his friend, Deandre, while at Deandre's house. Deandre had, in turn, been given the key from his friend, a person named Jacob. Jacob used to sell cars, "[s]o he told us to try it out, so we tried it out." On cross examination, C.T. testified that he had known Deandre for about three years, and that Deandre did not have a car before that night. C.T. admitted that he did not know if Jacob actually gave Deandre permission to drive the car, but that he trusted Deandre when he gave him the keys to the car and said, "I just go with what he told me." Deandre suggested that the two take the car to meet up with some girls and Deandre asked

3

C.T. to drive because he was the better driver. Deandre was in the car with C.T. when the police stopped the car.

At the conclusion of the adjudicatory hearing, defense counsel argued that C.T. was entitled to a judgment of dismissal because C.T. gave a patently reasonable explanation for his possession of the car—he got it from his friend, Deandre, who told him a friend of his who use to sell cars wanted them to "try it out." Moreover, nothing about the car's physical condition indicated to C.T. that it had been stolen. The State argued that C.T.'s explanation was unreasonable given his testimony that Deandre never had a car before, that he did not ask Deandre why he had a car, or why Jacob, whom C.T. does not know, was letting him drive the car.

The trial court denied the motion for judgment of dismissal and found C.T. delinquent, stating that "his explanation was not reasonable, particularly in light of his testimony that he knew that his friend [Deandre] previously had no automobile." The trial court withheld adjudication of delinquency and placed C.T. on probation. This appeal ensued.

## II.    STANDARD OF REVIEW

This Court reviews de novo a trial court's denial of a motion for judgment of dismissal. W.B. v. State, 179 So. 3d 411, 412-13 (Fla. 3d DCA 2015). "While the evidence must be viewed in the light most favorable to the State, if the State fails

4

to present sufficient evidence to establish a prima facie case of the crime charged, then a judgment of dismissal is proper." P.N. v. State, 976 So. 2d 90, 91 (Fla. 3d DCA 2008); accord E.A.B. v. State, 851 So. 2d 308, 310 (Fla. 2d DCA 2003).

III.    ANALYSIS

On appeal, C.T. argues that the trial court erred in denying his motion for judgment of dismissal because the State failed to present sufficient evidence that he knew the car he was driving was stolen.  We agree with C.T.

C.T. was charged with grand theft of a motor vehicle.[1]  The elements of grand theft of a motor vehicle are

---

[1] The crime of grand theft of a motor vehicle is set forth in section 812.014(1), (2)(c)6, Florida Statutes (2016):

> (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
> (a) Deprive the other person of a right to the property or a benefit from the property.
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.
>
> . . . .
>
> (2)(c) It is grand theft of the third degree and a felony of the third degree . . . if the property stolen is:
>
> . . . .
>
> 6. A motor vehicle . . . .

(1) the knowing and unlawful obtaining or use, or the knowing and unlawful endeavor to obtain or use, (2) the motor vehicle of another, (3) with intent to either temporarily or permanently (a) deprive the owner or lawful possessor of the motor vehicle of a right to the vehicle or a benefit from it, or (b) appropriate the motor vehicle to the accused's own use or to the use of any person not entitled to it.

Jones v. State, 666 So. 2d 960, 964 (Fla. 3d DCA 1996). In order to prove the crime of grand theft of a motor vehicle, the State was required to prove that C.T. *knowingly* obtained or used the motor vehicle of another. See § 812.014(1), Fla. Stat. (2016); M.D.S. v. State, 982 So. 2d 1282, 1284 (Fla. 2d DCA 2008) ("In order to establish the crime of theft, the State must prove that the accused 'knowingly' obtained or used the property of another with the intent to deprive that person of the use of the property or to appropriate the property to the accused's use.").

To establish that C.T. knew the car he was driving was stolen, the State relied solely on the inference set forth in section 812.022(2), Florida Statutes, which provides that "proof of possession of property recently stolen, *unless satisfactorily explained*, gives rise to an inference that the person in possession of the property knew or should have known that the property had been stolen." (emphasis added). The inference provided by section 812.022(2) is sufficient to support a theft conviction. See Smith v. State, 742 So. 2d 352, 354-55 (Fla. 5th DCA 1999). The reasonableness of a defendant's explanation for possession of a

6

stolen item "is ordinarily a question of fact for the jury to determine, or the judge in a non-jury trial, together with all the other facts and circumstances in the case." J.J. v. State, 463 So. 2d 1168, 1169 (Fla. 3d DCA 1984) (Hubbart, J., dissenting), adopted on reh'g as opinion of the court.

However, "where a *reasonable* explanation for possession of recently stolen property is totally unrefuted, and there is no other evidence of guilt, the court must grant a directed verdict for the defendant." Smith, 742 So. 2d at 355 (emphasis in original); see also Coleman v. State, 466 So. 2d 395, 397 (Fla. 2d DCA 1985) ("[T]he rule is that where a defendant gives a patently reasonable explanation for his possession of recently stolen goods which is totally unrefuted, and there is no other evidence of guilt, the court must direct a judgment of acquittal.").

As such, this Court held in R.A.L. v. State, 402 So. 2d 1337 (Fla. 3d DCA 1981), that where the State's case is based entirely upon the inference arising under section 812.022(2), a finding of guilt is precluded where the defendant offers a reasonable and unrefuted explanation for possession of the stolen item and there are no additional incriminating circumstances. In R.A.L., this Court held that

> the respondent's unrefuted, exculpatory, and not unreasonable explanation of his possession of a stolen moped that he bought it at a flea market rendered the state's case, which was based solely on the inference provided by Section 812.022(2), Florida Statutes (1979), without any additional incriminating circumstances, insufficient as a matter of law to establish guilt.

7

402 So. 2d at 1337 (footnote omitted); accord E.L.S. v. State, 547 So. 2d 298, 299 (Fla. 3d DCA 1989) (holding that the juvenile's unrefuted, exculpatory, and not unreasonable explanation that driver told him the truck in which he was riding belonged to driver's uncle precluded conviction for theft); R.M. v. State, 450 So. 2d 897, 898 (Fla. 3d DCA 1984) (reversing juvenile's conviction for grand theft of vehicle where juvenile's unrefuted, exculpatory, and not unreasonable explanation that he borrowed it from his stepfather rendered the State's case insufficient as a matter of law); R.M. v. State, 412 So. 2d 44, 45 (Fla. 3d DCA 1982) (finding juvenile's unrefuted explanation that he borrowed the bicycle from a friend precluded conviction for grand theft).

Here, the explanation provided by C.T. for possession of the stolen vehicle was unrefuted by the State, and the State presented no other evidence of guilt. This Court's decisions in E.L.S., 547 So. 2d at 298, and R.M., 450 So. 2d at 897, are on point and compel reversal in the instant case. In E.L.S., this Court found that the State failed to prove that the juvenile defendant knew that the truck in which he was riding was stolen where the juvenile explained that "the driver told him the truck belonged to the driver's uncle from whom it had recently been stolen and to whom it had been returned." 547 So. 2d at 299. This Court characterized the juvenile's explanation as "not unreasonable" and held that the conviction for theft was not supported by the record. Id.

Similarly, in R.M., this Court reversed the juvenile's conviction for grand theft because the State failed to demonstrate that the juvenile knew the vehicle he was driving was stolen. 450 So. 2d at 897. In that case, the juvenile offered the "'unrefuted, exculpatory and not unreasonable'" explanation that he borrowed the vehicle from his stepfather. Id. at 898 (quoting R.A.L., 402 So. 2d at 1337).

Here, as in E.L.S. and R.M., we find that C.T.'s explanation for his possession of the vehicle was unrefuted, exculpatory, and reasonable. In the present case, C.T. testified that he got the key to the car from his friend, Deandre. Deandre, in turn, had gotten the key from his friend Jacob, who used to sell cars, and who "told us to try it out, so we tried it out." Additionally, C.T. testified that he trusted Deandre when he gave him the key to the car. Contrary to the trial court's reasoning below, the fact that Deandre "previously had no automobile" does not render C.T.'s unrefuted explanation unreasonable, as that fact is not inconsistent with C.T.'s testimony that he trusted his friend of three years when he stated that Jacob gave him permission to use the car. Nor, as the State suggests, was C.T.'s explanation for possession of the stolen car rendered "unsatisfactory" by C.T.'s failure to further question Deandre as to how or why he "suddenly" had possession of a car.

Additionally, the State offered no other evidence of guilty knowledge on the part of C.T. For example, there was no physical damage to the vehicle that might

have indicated to C.T. that it was stolen.[2]  See P.W. v. State, 730 So. 2d 422, 423 (Fla. 5th DCA 1999) (finding that there was no indication juvenile knew or should have known that the vehicle was stolen where there was no damage to the vehicle indicating it had been broken into and his friend represented that his grandmother was permitting him to drive the vehicle).  C.T. did not flee when approached and stopped by the police officers, cf. D.L. v. State, 138 So. 3d 499, 501 (Fla. 3d DCA 2014) (stating rule that evidence of flight is relevant to demonstrate a defendant's consciousness of guilt), and there was no evidence that C.T. gave the police officers an explanation for his possession of the car that differed from the one he presented at trial,[3] cf. P.N. v. State, 443 So. 2d 193, 194 (Fla. 3d DCA 1983) (concluding "that the multiplicity of alternative versions advanced by the juvenile created an issue for the trier of fact as to whether his possession of the [stolen] moped had been satisfactorily explained so as to dissipate the statutory presumption" set forth in section 812.022(2)).

IV.  CONCLUSION

---

[2] Indeed, during cross-examination, Alvarez acknowledged that when he retrieved his vehicle nothing had been damaged and that it was in exactly the same physical condition as it had been on the night it was stolen.

[3] The State's argument that C.T. provided multiple, contradictory versions of how he came into possession of the key is not supported by the transcript of the adjudicatory hearing.  A review of the transcript in its entirety shows that C.T.'s "multiple versions" were the result of the State's failure during cross-examination to clearly state in its questions to whom it was referring—Deandre or Jacob—when asking C.T. about his "friend."

Because the State failed to present sufficient evidence to establish that C.T. knew the car he was driving was stolen, we reverse the trial court's order withholding adjudication of delinquency and remand with directions to discharge C.T. from probation on this case.

Reversed and remanded with directions to discharge defendant from probation on this case.

.